UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FEDERAL DEPOSIT INSURANCE CORPORATION AS RECEIVER FOR WASHINGTON MUTUAL BANK,<br><br>        Plaintiff,<br><br>v.<br><br>REALFI HOME FUNDING CORP., formerly known as RESIDENTIAL HOME FUNDING CORP.,<br><br>        Defendant. | Civ. Action No. _____<br><br>**COMPLAINT FOR CONTRACTUAL INDEMNITY** |

## <u>INTRODUCTION</u>

1.      Pursuant to a written agreement, defendant RealFi Home Funding Corp., formerly known as Residential Home Funding Corp. ("Residential Home"), brokered mortgage loans for Washington Mutual Bank and/or its subsidiaries, including Long Beach Mortgage Company (collectively, "WaMu"). As part of its agreement, Residential Home promised to indemnify WaMu for any losses arising out of or relating to its alleged acts or omissions.

2.      After WaMu funded the loans from Residential Home, WaMu sold Residential Home-brokered loans into residential mortgage-backed securitized trusts ("RMBS Trusts") for which Deutsche Bank National Trust Company served as trustee ("Trustee"). The Trustee ultimately asserted claims that it suffered losses because of

COMPLAINT – Page 1

defective loans sold into the RMBS Trusts, including at least 14 mortgage loans brokered by Residential Home ("Residential Home Defective Loans").

3.      Plaintiff Federal Deposit Insurance Corporation as Receiver for WaMu ("FDIC-R") incurred losses settling the Trustee's claims. FDIC-R's losses resulted from Residential Home's acts or omissions, including, among other things, Residential Home's representation of and assistance to borrowers, and collection, preparation, and submission of loan applications and documentation that misrepresented such things as the borrowers' credit histories, employment status, income, or occupancy status.

4.      FDIC-R demanded that Residential Home honor its written contractual indemnification obligation. Because Residential Home has not honored its obligations, FDIC-R brings this action as successor to WaMu's rights, titles, powers, and privileges.

## PARTIES, JURISDICTION, AND VENUE

5.      The Federal Deposit Insurance Corporation is an instrumentality of the United States and is organized and exists under the laws of the United States. 12 U.S.C. §§ 1811, 1821(d). Pursuant to 12 U.S.C. § 1821(d)(2), FDIC-R succeeded to all rights, titles, powers, and privileges of WaMu and of any stockholder, member, account holder, depositor, officer, or director of WaMu with respect to the bank and its assets. FDIC-R brings this action in its capacity as the duly appointed receiver of WaMu, which the Office of Thrift Supervision closed on September 25, 2008, appointing FDIC as Receiver for WaMu that same day.

COMPLAINT – Page 2

6.     Residential Home is a New York corporation with its principal place of business in White Plains, New York.

7.     This Court has subject-matter jurisdiction pursuant to 12 U.S.C. § 1819(b)(1) and (2) and 28 U.S.C. §§ 1331 and 1345.

8.     Venue is proper in this district pursuant to 28 U.S.C § 1391(b)(1).

## FACTUAL ALLEGATIONS

9.     WaMu was a federal savings bank that, directly or through affiliates and/or subsidiaries, among other things, purchased, funded, and sold mortgage loans to investment trusts that packaged loans into securities for investors, which are generally known as residential mortgage-backed securities.

10.     On information and belief, Residential Home engaged in the business of brokering, originating, processing, packaging, submitting for funding, selling and/or transferring loans secured by real property.

**A. Residential Home's Contractual Obligations**

11.     Residential Home and WaMu had a contractual business relationship, governed by the Mortgage Broker Agreement ("Agreement") attached hereto as Exhibit 1.

12.     Residential Home agreed that it would prepare, package, and submit loan applications on behalf of loan applicant borrowers seeking WaMu loans. Residential Home was responsible for, among other things, representing loan applicants in locating lenders, interacting directly with and interviewing the borrower, counseling and assisting the borrower in the financing process, collecting

COMPLAINT – Page 3

relevant information and documentation in support of the loan application, preparing the loan application and submission package; and submitting the completed loan package to WaMu.

13.  Residential Home was compensated for loans funded by WaMu, including the Residential Homes Defective Loans.

14.  Pursuant to the Agreement, Residential Home expressly agreed to indemnify WaMu as follows:

> [Residential Home] agrees to indemnify, hold harmless, and defend [WaMu] . . . from and against any and all losses, claims, demands, damages, expenses or costs . . . which in any way arise out of or relate to an alleged act or omission of [Residential Home] . . . in connection with an Applicant, an Application Package, a Mortgage Loan, or this Agreement.

## B. The Residential Home Defective Loans

15.  Pursuant to the Agreement, Residential Home brokered the 14 Defective Loans summarized on Exhibit 2, which is incorporated by reference and attached hereto.

16.  As noted above and set forth in more detail below, the Trustee asserted claims against FDIC-R based on alleged breaches of WaMu's representations and obligations concerning the quality and characteristics of the loans, the borrowers, and the collateral on certain loans sold into the RMBS Trusts, including the Residential Home Defective Loans. Accordingly, FDIC-R incurred losses in connection with the Residential Home Defective Loans.

17.  The Residential Home Defective Loans contained inaccurate and incomplete loan applications or other documentation because of misrepresentations

COMPLAINT – Page 4

in the application materials, including but not limited to misrepresentations relating to the quality and characteristics of the loans, borrowers, and collateral.

18.     As an example, the loan application and documents for two mortgage loans totaling $337,000 to PF and JR ("PF/JR") that Residential Home submitted to WaMu in June 2006 contained deficiencies, inaccuracies, and material misrepresentations. The loan applications misrepresented PF's and JR's incomes, which were presented as $5,000 and $4,500 per month, respectively. However, as shown in the PF and JR's individual 2006 federal income tax returns (which PF and JR provided to WaMu after the loan defaulted in response to WaMu's collection efforts), their actual monthly incomes were no more $1,000 and $3,000, respectively. The loan applications, thus, among other things, misrepresented PF/JR's capacity to repay the loans.

19.     As another example, the loan application and documents for a mortgage loan totaling $300,000 to CD in December 2005 contained deficiencies, inaccuracies and material misrepresentations. The loan applications misrepresented CD's income and prior rental residence history, which was supported by a false verification of rent. Moreover, the transaction involving CD's property purchase was misrepresented as it was closed as an undisclosed double escrow "flip" transaction, with proceeds from the $300,000 CD loan applied to the property seller's contemporaneous purchase of the property. The individual who "flipped" the property to CD is the brother of Residential Home's loan officer for the CD loan.

20.     Taken together, the 17 Residential Home Defective loans include,

among other things, loans with straw borrowers, loans with false or misleading rental histories, loans with false income information, and loans with false occupancy representations and certifications.

## C. WaMu's Sale of the Residential Home Defective Loans to the RMBS Trusts

21.     After WaMu funded the Residential Home Defective Loans, WaMu sold each of them to the RMBS Trusts.

22.     In connection with such sales, and in reliance on the materials, representations, obligations, and remedies Residential Home provided, WaMu provided similar representations, obligations, and remedies to the RMBS Trusts regarding the quality and characteristics of the loans and the borrowers. With respect to defective loans, WaMu was liable to the RMBS Trusts where there was a material misrepresentation or omission in a loan application or other supporting documentation, among other things.

## D. The Trustee Action and FDIC-R's Settlement with Trustee

23.     After WaMu failed, on December 30, 2008, the Trustee filed a proof of claim with FDIC-R asserting that WaMu breached representations and warranties in connection with the loans sold to various RMBS Trusts. On August 26, 2009, the Trustee filed a lawsuit in the District Court for the District of Columbia against FDIC-R for losses resulting from defective loans that WaMu sold to the RMBS Trusts, including the Residential Home Defective Loans.

24.     FDIC-R defended itself against the claims in the Trustee's lawsuit and eventually settled with the Trustee.

25.     Pursuant to a settlement agreement with an effective date no earlier than September 5, 2017, FDIC-R and the Trustee settled claims against FDIC-R, including representation and warranty breach claims arising out of or relating to the Residential Home Defective Loans. On September 5, 2017, FDIC-R paid a $3,006,929,660 receivership certificate to the Trustee in settlement of the Trustee's claims, including claims on the Residential Home Defective Loans. Settlement of the Trustee's claims for that court-approved amount was objectively reasonable. FDIC-R's claims are timely because they are brought within six years of the date FDIC-R suffered a loss. 12 U.S.C. § 1821(d)(14).

26.     FDIC-R was liable for the losses due to breaches of WaMu's representations and warranties concerning the quality and characteristics of certain loans sold into the RMBS Trusts, which loans included the Residential Home Defective Loans. The Trustee asserted that FDIC-R was contractually responsible for breaches of representations and warranties, including, among other things, as a result of misrepresentations, negligence, or fraud in the origination of the loan, and defaults such as, for example, misrepresentations of income. Given Residential Home's role and conduct in connection with the Residential Home Defective Loans, including Residential Home's relationship to the borrowers and its preparation, gathering, and submission of loan applications and documentation, FDIC-R's liability and loss to the Trustee arose out of or related to Residential Home's acts or omissions.

### E. Residential Home's Breach of the Indemnification Obligations

27. On June 23, 2021, FDIC-R sent a demand letter to Residential Home seeking indemnification for its losses arising out of or relating to Residential Home's acts or omissions in connection with the Residential Home Defective Loans. Residential Home has not honored its obligation to indemnify under the Agreement.

28. The Agreement provides that the prevailing party in any action to enforce it may recover its reasonable attorneys' fees. In order to enforce Residential Home's obligations under the Agreement, FDIC-R has retained outside counsel and agreed to pay it reasonable attorneys' fees. In addition, FDIC-R has assigned in-house counsel to assist in actively preparing to bring this case to trial.

29. All conditions precedent to the relief sought in this action have been fulfilled.

## <u>CLAIM FOR RELIEF</u>

### (Contractual Indemnification)

30. Plaintiff FDIC-R incorporates by reference the allegations set forth above as though set forth fully herein.

31. The Agreement is a valid and enforceable contract.

32. Plaintiff substantially performed all its obligations under the Agreement.

33. FDIC-R is entitled to indemnification from Residential Home for the losses FDIC-R suffered settling the Trustee's claims, arising out of or relating to

COMPLAINT – Page 8

Residential Home's acts or omissions, in connection with the Residential Home Defective Loans.

34.     Residential Home breached its obligation to indemnify FDIC-R, resulting in damage to FDIC-R in an amount to be proven at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff FDIC-R respectfully requests that it be granted:

A.     A judgment against Residential Home in an amount to be proven at trial for its breach of its indemnification obligation;

B.     Pre-judgment interest under 12 U.S.C. § 1821(*l*) or applicable state law;

C.     Reasonable attorneys' fees;

D.     Costs and expenses; and

E.     Any other relief as the Court deems just and proper.

DATED: August 22, 2023

MARK MIGDAL & HAYDEN

By: */s/ Michelle G. Bernstein*
     Michelle G. Bernstein
     80 SW 8th St, Suite 1999
     Miami, FL 33130
     Tel.: (305)374-0440

MARK MIGDAL & HAYDEN

By: */s/ Paul Levin*
     Paul A. Levin (to seek admission *pro hac vice*)
     80 SW 8th St, Suite 1999
     Miami, FL 33130
     Tel.: (305)374-0440

COMPLAINT – Page 9

FEDERAL DEPOSIT INSURANCE CORPORATION

By: _/s/ John Stuart Tonkinson_
     John Stuart Tonkinson (to seek admission *pro hac vice*)
     3501 Fairfax Drive
     Arlington, VA 22226
     Tel.: (214) 673-7549